In the
**UNITED STATES DISTRICT COURT**
for the **SOUTHERN DISTRICT OF INDIANA,**
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| **BARRY DORTING**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **CAUSE NO. 1:06-cv-485-SEB-TAB** |
| | ) | |
| **VALUE VILLAGE, INC.**, | ) | |
| | ) | |
| Defendant. | ) | |

### E N T R Y

**Defendant's Motion for Summary Judgment (doc. 37)**

Plaintiff Barry Dorting was employed as Defendant Value Village's City Manager for its Indianapolis, Indiana area stores. In February 2004, Value Village withdrew Mr. Dorting's responsibilities from him and placed him on a leave of absence when errors were discovered in his payroll paperwork and there were indications that he was under the influence of a substance or substances that rendered him incapable of performing his job. A day or two later, Mr. Dorting entered a residential detoxification facility to wean himself off of prescription medications. About a week later, he was released to a halfway-house program that required its residents to maintain employment, if possible. Mr. Dorting inquired about returning to work and Value Village allowed him to return but did not place him in his old position as City Manager: he was assigned as a store-manager trainer, a position that carried significantly less responsibility, less pay, and no company car. Less than a month later, Mr. Dorting's employment was terminated

for poor attendance and performance.  His present suit claims that Value Village actions violated his rights under federal and state law.

Count I of Mr. Dorting's complaint claims that Value Village's failure to reinstate him as City Manager when he was released from the detoxification facility violated his right to reinstatement under the Federal Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*  Count I also claims that Value Village terminated Mr. Dorting's employment in retaliation for his taking FMLA leave, but he has since abandoned this claim. (Memorandum in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment (doc. 47) ("Response Brief"), p. 1). The parties report that they have settled Count II's state-law claim that Value Village failed to pay Mr. Dorting all money due to him upon his termination; they intend to file a stipulation of dismissal once a memorialization of their agreement is executed.  (Memorandum in Support of Motion for Summary Judgment *etc.* (doc. 38) ("Motion Brief"), p. 1 n. 1; Response Brief, p. 1 n. 3).  Count III claims that Value Village "terminated Plaintiff's employment in retaliation for having a worker's compensation claim" and, as such, Value Village's termination of Mr. Dorting's employment constituted wrongful termination under Indiana state law. Complaint, ¶¶ 36 and 37.

Value Village moves for summary judgment as to Counts I and III but its briefs fail to address the facts and law that are relevant to Count III's worker's-compensation retaliation claim.  Therefore, Value Village's motion is summarily denied as to Count III and this Entry addresses only Count I's FMLA reinstatement claim.  Mr. Dorting does not assert an FMLA claim regarding his termination.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Although all reasonable inferences from the evidence shall be drawn in favor of the non-moving party, the non-moving party cannot rest upon his pleadings but must demonstrate a genuine issue of material fact by presentation of specific evidence. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Mr. Dorting began work for Value Village in January 1999. In November 1999, he was appointed as City Manager of its Indianapolis, Indiana, stores. On February 23, 2004, Donald ("Rick") Wenger, Value Village's Vice President of Operations and Mr. Dorting's supervisor, inquired of the Indianapolis office why payroll had not been submitted on time. He was informed by personnel working in Mr. Dorting's office that Mr. Dorting was incapable of completing the payroll due to his being under the influence of a substance that he was taking, that other employees were attempting to complete the payroll, and that Mr. Dorting had been sent home. Mr. Wenger arrived at the Indianapolis office that evening to look into the matter and was given more information about Mr. Dorting's reported impaired condition. Mr. Wenger reviewed Mr. Dorting's payroll paperwork, found errors therein, and corrected them. The next morning, he met with Mr. Dorting and inquired about his condition. Mr. Dorting reported that he was taking prescription Vicodin and methadone. A drug test administered to Mr. Dorting that same morning resulted positive for opiates, which was consistent with his reported medications. At that point, Mr. Wenger took Mr. Dorting's company-car keys and his company credit cards, had another employee drive him home, and put Mr. Dorting's company car in storage. Mr.

Wenger informed the Indianapolis-area store managers that Mr. Dorting was on a leave of absence and he removed Mr. Dorting from Value Village's bank signature card.

The next day (or the day after), Mr. Dorting entered a residential detoxification facility in Indianapolis in order to get off his prescribed medications.[1]  Six or seven days after entering the facility, Mr. Dorting was released to a ninety-day step-down program at a halfway house and he inquired about returning to work at Value Village.  There is no evidence that either the detoxification facility or the halfway house imposed any conditions on Mr. Dorting's return to work or otherwise restricted his ability to return to his former position.  Mr. Wenger testified that he was surprised at Mr. Dorting's brief stay at the facility; he had assumed that it would have been about a thirty-day stay.  Mr. Wenger testified that he would check with the owner of the company in deciding whether Mr. Dorting could return to work.  In the interim, Mr. Dorting spoke with the owner himself and the owner then called Mr. Wenger to discuss the matter.  They decided that Mr. Dorting could return to work only under certain criteria:  in part, he would be placed in a manager's position, receive a reduced pay rate, be on a time clock, submit to random drug testing, and be on a two-year probationary period.  On March 4, 2004, Mr. Dorting signed a document listing these conditions and stated that he read and agreed to them.  He commenced work in the new position with the primary responsibility of in-store manager training.

Following surgery on his hand and arm in April of 2003, Mr. Dorting was prescribed Vicodin as a pain reliever.  Mr. Wenger testified that, sometime after the operation, Mr. Dorting

---

[1] The parties dispute who found the facility.  Mr. Dorting asserts that he located it and made the arrangements himself while Mr. Wenger testified that he found the facility in response to Mr. Dorting's request for help.  The difference is not material to determination of the motion.

passed out in Mr. Wenger's car during one of Mr. Wenger's periodic tours of the Indianapolis stores.  Mr. Wenger had a drug test administered immediately and Mr. Dorting tested positive for opiates and informed Mr. Wenger that he was on Vicodin.  Mr. Dorting testified that he was told and/or pressured at work to get off the medication.  As a result, sometime in February 2004, he went to a methadone clinic and was prescribed methadone in an effort to wean him off Vicodin.  At the time of the payroll incident later that month, he was still taking both medications.  There is no evidence submitted in conjunction with the present motion that Mr. Dorting was taking anything other than his prescribed medications, that he was abusing them, or that he was not following prescribed treatments.

Under the FMLA, an eligible employee with a serious health condition that renders him unable to perform the functions of his employment is entitled to twelve workweeks of leave during any twelve-month period.  29 U.S.C. § 2612(a)(1)(D).  On return from leave, the FMLA entitles the employee to reinstatement to his pre-leave position of employment or to an equivalent position with equivalent benefits, pay, and other terms and conditions of employment.  29 U.S.C. § 2614(a)(1).  It is unlawful for an employer to interfere with, restrain, or deny the exercise of any rights under the FMLA.  29 U.S.C. § 2615(a)(1).  *Kohls v. Beverly Enterprises Wisconsin, Inc.*, 259 F.3d 799, 804 (7th Cir. 2001).

Value Village admitted, and has not disputed on the present motion, that Mr. Dorting was on a medical FMLA leave of absence in February and March 2004, while he was in the detoxification facility.  Complaint, ¶¶ 8 and 9; Answer, ¶ 4.  Value Village also contends that, while Mr. Dorting's responsibilities as City Manager were removed from him following the payroll incident, his employment was not terminated until later in March, after he returned to

5

work. Thus, there is no dispute about Mr. Dorting's eligibility for FMLA leave or whether his condition was a serious health condition that made him unable to perform the functions of his employment.[2]

Value Village moves for summary judgment on Mr. Dorting's FMLA reinstatement claim on two grounds. First, it argues that Mr. Dorting waived his FMLA right to be reinstated to the City Manager position when he signed the statement agreeing to the list of conditions imposed on his return, and when he worked in the new position without complaint until he filed this suit. Second, Value Village argues that Mr. Dorting's position as City Manager was terminated for poor performance regardless of his FMLA leave. Third, it argues that, on his return to the company, Mr. Dorting was still unable to perform the functions of the City-Manager position and the FMLA does not entitle an employee to any benefit or position to which he would not otherwise be entitled absent the leave.

Value Village did not cite to any standard governing an employee's waiver of FMLA rights. However, the regulations implementing the Act provide:

---

[2] While Mr. Dorting admitted making errors in only the driver-bonuses portions of the February payroll and taking prescribed Vicodin and methadone, he denied being dependent on the drugs, Dorting Deposition, p. 38, or having a problem with the drugs, *id.*, p. 39, and he repeatedly denied that the drugs rendered him incapable of completing the payroll or his job duties, *id.*, pp. 28, 47, 49. His testimony is not unambiguous, however. He also testified: "I don't know if I was incapable of performing my duties. That I can't say. That I'm not sure of." *Id.*, pp. 48-49. Immediately following, he states that he disagrees with the statement that he was rendered incapable of performing his responsibilities. *Id.*, p. 49. In the context of his unclear testimony, the admission by Value Village that he was on FMLA leave, and in consideration of his firm assertion that he did not have a "serious health condition" that made him "unable to perform the functions" of his employment, 29 U.S.C. § 2612(a)(1)(D), Mr. Dorting may have pled himself out of an FMLA claim. We assume, therefore, for purposes of this motion, that Mr. Dorting does assert that he had a serious health condition that made him unable to perform his job duties at the time of the February 2004 payroll incident.

> Employees cannot waive, nor may employers induce employees to waive, their rights under FMLA. For example, employees (or their collective bargaining representatives) cannot "trade off" the right to take FMLA leave against some other benefit offered by the employer. This does not prevent an employee's voluntary and uncoerced acceptance (not as a condition of employment) of a "light duty" assignment while recovering from a serious health condition. In such a circumstance the employee's right to restoration to the same or an equivalent position is available until 12 weeks have passed within the 12-month period, including all FMLA leave taken and the period of "light duty."

29 C.F.R. § 825.220(d). *Hendricks v. Compass Group, USA, Inc.*, 496 F.3d 803, 805 (7th Cir. 2007) ("An employee, though, may not waive his rights under the FMLA, whether on his own or through his employer's inducement"). There is ample testimony and evidence showing that Value Village decided, and told Mr. Dorting, that he could return to work following his FMLA leave only if he agreed to the store-manager position with reduced pay and responsibilities. For example, the document signed by Mr. Dorting stated: "Barry can come back to work only under the following criteria." (Motion Brief, Exhibit A, p. 2). Value Village contends that the offer of the lighter-duty training position, with commensurate reduced pay, was merely an accommodation of Mr. Dorting's own expressed request for such a job based on his admitted inability to handle the City Manager's position at that time. However, Mr. Dorting denied making such an admission and testified that he was capable of performing the City-Manager position when he left the detoxification facility, requested to return in that capacity, and signed the agreement only because it was the only position that Value Village offered to him and he needed the employment, not only for the pay and benefits but because the halfway house required that he be employed. This clearly is a genuine dispute in the testimony.

The bare-bones agreement does not mention the FMLA, Mr. Dorting's reinstatement rights thereunder, or a release of such rights. Thus, there is a genuine issue of material fact

concerning whether Mr. Dorting released his FMLA reinstatement right and, if so, whether he was improperly induced to do so by Value Village. Finally, Value Village provided no authority for its contention that a lack of proximate complaints effects a waiver of reinstatement rights under the FMLA. While it might constitute evidence consistent with a previous release of such rights, the other evidence in this case creates a genuine question about that material fact.

Value Village next argues that Mr. Dorting is not entitled to reinstatement as City Manager because he was terminated from that position for poor performance regardless of his FMLA leave. Its argument appears to be that, because Mr. Dorting was performing poorly[3] and tested positive for opiates, he was properly removed as City Manager for performance reasons unrelated to FMLA leave. It contends that Mr. Dorting cannot point to any similarly-situated employee who would have been able to remain in his position under the same circumstances.[4] It further states that, even if Mr. Dorting's drugs were prescribed, "it was clear that there was something wrong with the dosage or with the way he was taking them in that they rendered him incapable of completing his job." (Motion Brief, p. 10-11). But this is the very purpose of the FMLA: to guarantee not only leave to employees with serious health conditions that render them incapable of performing their duties, but reinstatement to their positions when the leave —

---

[3] It should be noted that the only evidence or assertion of poor performance submitted on the present motion was Mr. Dorting's inability to complete, or his errors in completing, the February payroll.

[4] While terms such as "similarly-situated employee" tend to suggest a discrimination or retaliation mode of analysis, FMLA is not an anti-discrimination statute. It grants substantive rights that don't depend on comparison with an employer's treatment of other employees. *Diaz v. Fort Wayne Foundry Corp.*, 131 F.3d 711, 712-13 (7th Cir. 1997). We read Value Village's references to similarly-situated employees as only indicating the unlikelihood of any employee being retained under similar circumstances and, thus, Value Village's uniform policy.

and, hopefully, the incapacity — ends.  Again, Value Village admits that Mr. Dorting's leave was FMLA leave.  The FMLA doesn't just guarantee *a* position with an employer when an employee's leave is concluded, but reinstatement to *the* position — or its equivalent — that an employee had when he went on leave.

If the unexpressed subtext of Value Village's argument is that the one- or two-day gap between Mr. Dorting's dismissal as City Manager and his taking FMLA leave eliminates the requirement that he be reinstated as City Manager — because, when he went on leave, he was in a "limbo," still employed but without position — then we note that such an argument was neither clearly expressed nor factually or legally developed and is, therefore, forfeited.  *United States ex rel. Fowler v. Caremark RX, L. L. C.*, 496 F.3d 730,  743 (7th Cir. 2007), *cert. denied*, 2008 WL 423613 (Feb. 19, 2008); *E. C. Styberg Engineering Co. v. Eaton Corp.*, 492 F.3d 912, 916 n. 2 (7th Cir. 2007).  Moreover, it is well-settled that, in the absence of an employee's formal notice or request for leave and after manifestation of terminable performance problems, an employee may still be entitled to FMLA leave and reinstatement if there were sufficient indications beforehand of a serious health condition impacting the employee's ability to perform.  *Burnett v. LFW, Inc.*, 472 F.3d 471, 479-81 (7th Cir. 2006); *Anders v. Waste Management of Wisconsin, Inc.*, 463 F.3d 670, 677-78 (7th Cir. 2006); *Byrne v. Avon Products, Inc.*, 328 F.3d 379, 381-82 (7th Cir.), *cert. denied*, 540 U.S. 881, 124 S.Ct. 327, 157 L.Ed.2d 147 (2003).  The record includes evidence that Value Village, through Mr. Wenger, had notice before the February 2004 payroll incident that Mr. Dorting was likely experiencing performance problems as a result of his prescribed medications (*e.g.*, Mr. Dorting's fainting episode in Mr. Wenger's car and his report of Vicodin use) and a factfinder could reasonably find that the circumstances of the February

9

incident itself were sufficient to give the notice anticipated by the FMLA to overcome the very brief gap between Mr. Dorting's dismissal as City Manager and his taking FMLA leave and, therefore, preserve his reinstatement right.

As its third ground for summary judgment, Value Village argues that, when Mr. Dorting returned to work following his FMLA leave, a reasonable question still remained as to whether he could perform the City Manager's job. Value Village's sole basis for this argument in its brief was Mr. Wenger's testimony that, when he asked to return to work, Mr. Dorting admitted that he was not able at that time to handle the responsibilities of a City Manager. Mr. Wenger testified that it was his intention to place Mr. Dorting in a position with reduced responsibilities until he was capable and ready to resume the City Manager position. Mr. Dorting, however, unequivocally denied that he told Mr. Wenger that he was not ready to return as City Manager; he testified that he was capable of doing the job and asked Mr. Wenger to resume his employment as City Manager. This is a classic genuine issue of material fact that prevents summary judgment. The fact-finder must resolve this dispute at trial.

Value Village attempts to rescue this argument by taking a new tack in its reply. There it argued that Mr. Wenger determined on his own, independently of Mr. Dorting's alleged admission of incapacity, that Mr. Dorting was not yet capable of resuming the duties of City Manager and that an employer has the right to make sure that an employee is ready before reinstating him. It is true, as Value Village points out, that an employee is not entitled to "any right, benefit, or position of employment" other than that to which he would have been entitled if he had not taken FMLA leave, 29 U.S.C. § 2614(a)(3)(B), and that, if an employee "is unable to perform an essential function of the position because of a physical or mental condition, including

the continuation of a serious health condition, the employee has no right to restoration to another position under the FMLA," 29 U.S.C. § 825.214(b).  However, Value Village does not explain the basis for Mr. Wenger's independent determination that Mr. Dorting was not ready to resume his duties as City Manager.  It does not point to any testimony by Mr. Wenger that he observed an impairment in Mr. Dorting after his release from the detoxification facility or that he reviewed any medical professional's report on Mr. Dorting's condition.  The only suggestion of a basis, and it's only a suggestion, is Mr. Wenger's asserted surprise at Mr. Dorting's earlier-than-expected release from the detoxification facility and request to return to work.  But this requires a medical knowledge and judgment about Mr. Dorting's level of use of his prescribed medications, the effects of that use on his abilities, and the nature and effectiveness of the detoxification treatment that Mr. Dorting underwent at the facility and was still undergoing at the halfway house.  There is no indication in the record on this motion that Mr. Wenger had access to any of this information.  In light of Mr. Dorting's testimony that he was capable of resuming, and wanted to resume, the City Manager's position, it is a trial question whether he was capable of the job and should have been reinstated.

Furthermore, the FMLA does not condition an employee's right to reinstatement on his employer's independent determination of fitness.  The Act and regulations provide a mechanism by which an employer may ensure that an employee has a qualified serious health condition warranting leave and that he is ready to return to work.  29 C.F.R. §§ 305-308, 310, and 311.  An employer may even delay reinstatement until an employee submits a fitness-for-duty certificate. 29 C.F.R. § 825.310(f).  Value Village did not avail itself of its right under the FMLA to obtain either a medical certificate at the start of Mr. Dorting's leave or a "fitness-for-duty" certification

afterward.  There is no indication in this motion that it made even an informal inquiry about Mr. Dorting's fitness to return to work to any of his treating professionals at either the detoxification facility or the halfway house.  While this course of action reasonably could be explained if Mr. Wenger's testimony about Mr. Dorting's admission of incapacity is credited, Value Village assumed the unreasonable risk of either not obtaining an FMLA medical certification or not documenting Mr. Dorting's admission of incapacity and request for a lighter-duty assignment.

For these reasons, Defendant Value Village has failed to show that there is lack of genuine issue of material fact and that it is due judgment as a matter of law.  Therefore, its motion for summary judgment is **DENIED**.

**IT IS SO ORDERED.**

Date: 03/28/2008

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Daniel Steven Tomson
WOOD TUOHY GLEASON MERCER & HERRIN, P.C.
dtomson@indylegal.com

Ronald E. Weldy
WELDY & ASSOCIATES
weldy@weldylaw.com